UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
EILEEN MENDEZ, as Parent and Natural Guardian of A.C. [1], and EILEEN MENDEZ, Individually,

Plaintiff,

-against-

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, and the NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendants.
-----------------------------------------------------------------X

**COMPLAINT**

**25-cv-**

**PLAINTIFF**, EILEEN MENDEZ ("Parent") as Parent and Natural Guardian of A.C. ("Student") (collectively "Plaintiff"),[2] and individually, as and for her Complaint against Defendants **MELISSA AVILÉS-RAMOS**, in her official capacity as Chancellor of the **NEW YORK CITY DEPARTMENT OF EDUCATION**, and the **NEW CITY DEPARTMENT OF EDUCATION** (collectively "DOE" or "Defendants"), allege as follows:

## PRELIMINARY STATEMENT

1. The Individuals with Disabilities Education Act ("IDEA") offers federal funds to states in exchange for a commitment to furnish a "free appropriate public education" ("FAPE") to all children with physical or intellectual disabilities. *See* 20 U.S.C. § 1401(3)(A)(i) (listing covered disabilities).

2. As defined in the IDEA, a FAPE comprises special education and related services—instruction tailored to meet a child's unique needs, and supportive services sufficient to allow the child to

---

[1] Although the full name of the Parent is used in the Complaint and Order to Show Cause herein, pursuant to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C.

§ 1232(g) (and 34 C.F.R. Part 99), Plaintiff is using the initials of the Student to protect the Student's privacy.

[2] As defined by 20 U.S.C. § 1401(3).

benefit from the instruction. 20 U.S.C. § 1401(26) and (29).

3. An eligible child acquires a substantive right to such an education once a State accepts the IDEA's financial assistance from the Federal Government.

4. Under the IDEA, an Individualized Education Program ("IEP") is the primary vehicle for providing a child with the promised FAPE.

5. An IEP is a unique educational program specially designed to meet the particular needs of a child with disabilities, which is created only after carefully considering the child's current levels of achievement, disability, and potential for growth. §§ 1414(d)(1)(A)(i)(I)-(IV), (d)(3)(A)(i)-(iv).

6. A school district's IEP must be specially designed to meet the unique needs of a child with disabilities.

7. To meet its substantive obligation under the IDEA, a school district must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.

8. A school district fulfills its substantive obligations under the IDEA when it provides an IEP reasonably calculated to enable a child to make some educational progress and advancement from year to year—progress that is appropriate in light of the child's circumstances and is something more than mere trivial advancement.

9. The Student suffers from a brain injury or brain-based disorder that adversely affects her educational abilities and performance.

10. On July 2, 2024, the Plaintiff brought a Due Process Complaint ("DPC") against DOE alleging, among other things, that DOE did not provide the Student a FAPE for the 2024-2025 school year ("SY"), that the International Academy of the Brain ("iBRAIN") and related

services was an appropriate unilateral placement, and that equities favored their request for direct payment of tuition and related services, including special transportation services, of the unilateral placement, in accordance with their respective agreements. U.S.C. § 1415(i) *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i).[3]

11. As part of the DPC, Plaintiff requested that DOE fully fund the Student's placement at iBRAIN, including special transportation, as pendency, to maintain the Student's status-quo educational placement, through the "stay-put" provision under 20 U.S.C. § 1415(j), since iBRAIN was the Pendency placement at the time the due process proceedings commenced, which established the Student's pendency throughout the administrative and judicial proceedings relative to the Plaintiff's DPC for the 2024-2025 SY.

12. During the 2024-2025 SY, on July 7, 2024, Plaintiff filed a federal action, along with other Plaintiffs, in the Southern District of New York seeking to establish and enforce their Students' rights to a timely and proper Resolution Meeting and their Pendency Rights for the 2024-2025 SY. The matter, *Chaperon et al v. Banks et al*, 1:24-cv-05135-JAV, is assigned to Judge Jeannette A. Vargas. On June 5, 2025, Judge Vargas held a hearing on the Plaintiff's Motion for a Preliminary Injunction, which is still pending to date. The Defendants are challenging the Student's pendency placement/program and its funding obligations in *Chaperon v. Aviles-Ramos.*

13. During the 2024-2025 SY, on February 6, 20205, Plaintiff filed a federal action in the

[3] Attached to the Plaintiff's DPC for the 2024-2025 SY were several documents that were relevant to the Student's educational program/placement for the 2024-2025 school year. Each document was marked as an exhibit to the DPC when filed. Attached to the DPC as **Exhibit A** was the Ten-Day Notice; **Exhibit B** was the Pendency Implementation Form; **Exhibit C** was the legal basis for Pendency, i.e., a final administrative order; **Exhibit D** was a proposed Order of Pendency; **Exhibit E** was the iBRAIN Annual Enrollment Contract; and **Exhibit F** was the Sisters Travel and Transportation ("Sisters") School Transportation Annual Service Agreement.

Southern District of New York seeking to enforce the Student's final administrative order (FOFD and subsequent SRO Decision) for the 2024-2025 SY. The matter, *Mendez et al v. Banks et al*, 1:24-cv-01096-CM, was assigned to Judge Colleen McMahon. The Plaintiff's Motion for a Preliminary Injunction and Defendants' Motion to Dismiss is still pending. This final administrative order is the legal basis for Student's Pendency placement for the 2025-2026 SY.

14. Unless the school district and the Parent agree otherwise, federal and state law requires the child to remain in their then-current educational placement during the pendency of a due process proceeding. *See* 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a); N.Y. Educ. Law §4404(a) (McKinney).

15. The term "then-current educational placement" is defined as either (1) the placement described in the Student's most recently implemented IEP; (2) the operative placement functioning at the time the due process proceeding was commenced; or (3) the placement at the time of the previously implemented IEP.

16. In most cases, the term "then-current educational placement" in the stay-put provision typically refers to a child's last agreed-upon educational program before the Parent requests a due process hearing to challenge the child's IEP.

17. A student's last agreed-upon placement, or final unappealed administrative decision regarding placement, establishes a student's Pendency Placement.[4]

18. Pendency provides stability and consistency in the education of a student with a disability and prevents schools from unilaterally making decisions that would otherwise exclude

[4] *See Student X v. New York City Dep't of Educ.*, No. 07-CV-2316(NGG)RER, 2008 WL 4890440, at *23 (E.D.N.Y. Oct. 30, 2008); Letter to Hampden 49 IDELR 197.

disabled students from school, as was the practice before the enactment of the IDEA.

19. The Plaintiff has filed a DPC against DOE alleging, among other things, that DOE did not provide their Student a FAPE for the 2025-2026 SY, that iBRAIN and related services is an appropriate unilateral placement, and that equities favored their request for direct payment of tuition and related services, including special transportation services, of the unilateral placement, in accordance with their respective tuition and special transportation service agreements. U.S.C. § 1415(i) *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i).[5]

20. Plaintiff brings this action seeking a pendency order, finding that iBRAIN, along with related services such as special transportation services, is the Student's pendency placement for the 2025-2026 SY, in accordance with their respective tuition and special transportation services agreements between the providers and Plaintiff.

21. "The IDEA's stay-put provision is triggered when a change in placement is proposed; a fundamental change in, or elimination of, a basic element of the educational program constitutes a change in placement." *Spilsbury v. D.C.*, 307 F. Supp. 2d 22, 27 (D.D.C. 2004) (quoting *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984)).

22. An aggrieved family need not seek a pendency order through the administrative process and may instead enforce their pendency rights via injunctive order from a federal court.

23. Because there is no exhaustion of administrative remedies requirement to 20 U.S.C. § 1415(j), a federal court has jurisdiction to issue a "stay-put" or "pendency" order pending the outcome

[5] Attached to the Plaintiff's DPC for the 2025-2026 SY are several documents that are relevant to the Student's educational program/placement for the 2025-2026 SY. Each document was marked as an exhibit to the DPC when filed. Attached to the DPC as **Exhibit A** is the Ten-Day Notice; **Exhibit B** is the Pendency Implementation Form; **Exhibit C** is the legal basis for Pendency, i.e., a final administrative order; **Exhibit D** is a proposed Order of Pendency; **Exhibit E** is the iBRAIN Annual Enrollment Contract; and **Exhibit F** is the Sisters School Transportation Annual Service Agreement.

of the due process hearing.

24. The Student has a previous final administrative order establishing iBRAIN and the Student's related services, including special transportation, as their Pendency program/placement for the 2025-2026 SY, in accordance with their respective tuition and special transportation service agreements.

25. The Plaintiff requests an order declaring iBRAIN, along with special transportation services, as their Student's Pendency program/placement during the administrative and/or judicial proceedings relative to their DPC for the 2025-2026 SY, in accordance with their respective tuition and special transportation service agreements.

26. The Plaintiff requests an order requiring Defendants to fund the Student's program/placement at iBRAIN, along with special transportation services, in accordance with their respective tuition and special transportation service agreements, throughout the administrative and/or judicial proceedings relative to their DPC for the 2025-2026 SY.

27. Since pendency has the effect of an automatic injunction, Plaintiff need not meet the traditional requirements for injunctive relief, such as the likelihood of success on the merits, irreparable harm, or a balancing of the hardships, to obtain a pendency order.

28. If Plaintiff is required to meet the traditional requirements for injunctive relief, she can show she meets such requirements.

## JURISDICTION AND VENUE

29. This case arises under a federal statute, the IDEA (20 U.S.C. § 1400 *et seq.*), and the regulations of the United States Department of Education, which were promulgated under authority granted by statute. 34 C.F.R. Part 300.

30. This Court has subject-matter jurisdiction of the matter pursuant to 28 U.S.C. § 1331 in that

claims arise under federal law, including the IDEA and 42 U.S.C. § 1983.

31. This Court has subject-matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983.

32. To the extent this case involves questions about special education rights under New York State Law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

33. This Court may grant Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, implemented through Fed. R. Civ. P. 57.

34. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York in that Defendants MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, and the NEW YORK CITY DEPARTMENT OF EDUCATION (collectively "Defendants") maintain a business office in New York County.

35. Plaintiff is entitled to costs and attorneys' fees under 42 U.S.C. § 1988(b) and 20 U.S.C. §1415(j) if found to be prevailing parties.

## **THE PARTIES**

36. At all relevant times herein, Defendant MELISSA AVILES-RAMOS was and is the Chancellor of the New York City Department of Education and is being sued in her official capacity as Chancellor.

37. At all relevant times herein, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION is, and was, a corporate body created by Article 52 of the New York State Education Law, CLS N.Y. Educ. Law § 2550 (McKinney) *et seq.*, that manages and controls the educational affairs of the New York City public schools and is required to do so in compliance with state and federal laws and regulations not in conflict with their underlying

statutory authority.

38. Defendant NEW YORK CITY DEPARTMENT OF EDUCATION is the Local Education Agency ("LEA"), defined in 20 U.S.C. § 1401 and 34 C.F.R. § 300.28, responsible for providing a FAPE to the Student with a disability.

39. Defendants receive federal funds for their commitment to furnish a FAPE to all children with certain physical and/or intellectual disabilities in the City of New York. 20 U.S.C. §1401(3)(A) (listing covered disabilities).

40. Defendants' principal place of business is located at 52 Chambers Street, in the County and State of New York.

41. DOE's Impartial Hearing Order Implementation Unit is located at 65 Court Street, Room 1503, Brooklyn, New York 11201.

42. Plaintiff EILEEN MENDEZ is the Parent and Natural Guardian of A.C.

43. A.C. is a minor.

44. A.C. was fourteen years old at the start of the 2025–2026 school year (SY).

45. A.C. is a student with a disability as defined by 20 U.S.C. § 1401(3).

46. At all relevant times herein, the Parent and Student both resided within New York City.

47. A.C. is entitled to receive a FAPE and related services from DOE.

48. Since A.C. is a student with a disability, DOE must provide her with a FAPE under the IDEA and the New York Education Law.

49. DOE must provide A.C. with an IEP every year so long as A.C. remains qualified under the IDEA.

## FACTUAL ALLEGATIONS

**<u>EILEEN MENDEZ, PARENT AND NATURAL GUARDIAN OF A.C.</u>**

50. On June 12, 2025, Plaintiff sent a Ten-Day Notice ("TDN") to the DOE rejecting its proposed IEP for A.C. for the 2025–2026 SY as inappropriate to meet her needs, notifying it of her intent to maintain A.C.'s placement at iBRAIN for the upcoming 2025–2026 school year and requesting DOE to continue funding the total cost of A.C.'s then-current educational program/placement at iBRAIN pursuant to the most recent final administrative order from the 2024-2025 SY.

51. On July 7, 2025, Plaintiff commenced a DPC against DOE. The DPC alleges, among other things, that DOE did not provide A.C. a FAPE for the 2025-2026 SY, that iBRAIN was an appropriate unilateral placement for A.C., and that equities favored a request for direct payment of tuition and related services, including special transportation services, in accordance with the respective agreements, of the unilateral placement. U.S.C. § 1415(i) *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i).

52. In the same notice, Plaintiff requested a timely and proper Resolution Meeting and for the Impartial Hearing Officer to expedite the scheduling of a Pre-Hearing Conference, "Please note, as per Section 300.510(a)(1) of the Part B regulations of 34 C.F.R. §300.510, and consistent with Section 615(f)(1)(B)(i) of the IDEA, within 15 days of receiving notice of the Parent's Due Process Complaint ("DPC"), and prior to the initiation of an impartial due process hearing under 34 C.F.R. §300.511, the DOE must convene a meeting with the Parent and the relevant members of the IEP Team who have specific knowledge of the facts identified in the DPC. Our Clients request an immediate resolution meeting and also request the Impartial Hearing Office expedite this DPC by scheduling a Pre-Hearing Conference immediately in order to address the ongoing violations of state and federal law as outlined below."

53. In the same notice, Plaintiff requested DOE fully fund A.C.'s placement at iBRAIN, in accordance with the respective contracts for tuition and special transportation, as pendency, to maintain the status-quo educational placement, through the "stay-put" provision under 20 U.S.C. § 1415(j), since iBRAIN is the Pendency placement at the time the due process proceedings commenced, which established A.C.'s Pendency throughout the administrative and judicial proceedings relative to Plaintiff Mendez' DPC for the 2025-2026 SY.

54. A true and accurate copy of Plaintiff's DPC relative to the 2025-2026 SY is attached hereto as **Exhibit 1**.

55. Attached to and made part of **Exhibit 1** are documents relevant to A.C.'s current educational program/placement when the DPC was filed, including the most recent, final administrative order for A.C., which is the "current educational placement" and legal basis for Pendency.

56. The DPC was assigned IHO Case No. 297049.

57. On July 8, 2025, Impartial Hearing Officer ("IHO") Natasha Pierre ("IHO Pierre") was appointed by New York City's Office of Administrative Trials and Hearings' ("OATH") Special Education Hearings Division ("SEHD") to conduct hearings addressing the Parent's DPC allegations.

58. A true and accurate copy of IHO Pierre's appointment relative to IHO Case No. 297049 is attached hereto as **Exhibit 2**.

59. On July 9, 2025, IHO Pierre issued an Interim Order in IHO Case No. 297049 ("July 9 Interim Order").

60. Relevant parts of the July 9 Interim Order are:

"2.d. All rulings made by the IHO are final and further arguments or corrections are not allowed.

3.a. A Pre-hearing Conference ("PHC") will be scheduled the first available date after the end of the resolution period.

3.f. Except in limited circumstances, a due process hearing will be scheduled, within 2-3 weeks from the compliance date. The parties shall be prepared with their witness availability for this time frame.

4.a. The DOE is expected to implement pendency immediately or no later than 5 business days before the prehearing conference. If the Parent asserts a pendency claim, the DOE must immediately review the request and send the Parent a detailed list of the services the DOE will be providing."

61. In issuing the July 9 Interim Order, IHO Pierre scheduled the Pre-Hearing Conference on Monday, August 11, 2025, from 11:30am-12:00pm and the Due Process Hearing for only one hour on Wednesday, September 17, 2025 from 10:00am – 11:00am.

62. With the Compliance Date set for September 20, 2025, it would be virtually impossible to conduct the entire Due Process Hearing in one hour and have a FOFD issued three days later.

63. The scheduling of the due process hearing three days before the compliance date contradicts IHO Pierre's July 9 Interim Order, "Except in limited circumstances, a due process hearing will be scheduled, within 2-3 weeks from the compliance date."

64. Therefore, by default the administrative hearing is already out of the federally-mandated compliance deadlines. The Plaintiff has requested an earlier due process hearing date and the request is still pending with IHO Pierre.

65. The July 9 Interim Order provides the DOE with up to 28 days to begin implementing pendency, which is supposed to be an automatic right. To date, the DOE has not responded to the July 9 Interim Order, including with regards to Pendency.

66. A true and accurate copy of the July 9 Interim Order is attached hereto as **Exhibit 3**.

**<u>DOE'S ONGOING SYSTEMIC VIOLATIONS INCLUDE FAILURE TO IDENTIFY AND IMPLEMENT PENDENCY PLACEMENTS</u>**

67. DOE has no policies or procedures in place to ensure timely implementation of stay-put rights upon the filing of a DPC.

68. DOE engages in spurious and dilatory tactics when it comes to its obligation to fund pendency programs and placements, often assuring parents and counsel that it is "processing payments" and will disburse them in their "due course."

69. DOE refuses to explain what its "due course" is when it comes to processing pendency payments.

70. DOE wears its systemic failures like a badge of honor.

71. According to the public testimony of DOE General Counsel, Liz Vladeck, at a NYC Council meeting on January 30, 2025, Ms. Vladeck testified about the DOE's "normal due course" of issuing payments that once a payment is authorized: payment is made the same day or within a day. Ms. Vladek was asked to describe how the *LV* litigation relates to the DOE's current funding process, and responded:

"1:48:12 So the LV litigation covers, due process cases.

1:48:16 So once an impartial hearing officer makes a decision, issues an order saying here's what DOE has to do to implement the IEP or IESP.

1:48:26 The case goes over to the implementation team on in within the office of the general counsel, which has to break down the decision from the hearing officer, make sure it's clear what relief has been requested, seek certain authorizations, whether it's from providers, parents, or attorneys, make sure we've got a clear basis for what it is we'd be paying for, and then move forward to authorize those payments.

1:48:51 That process then moves over to the division of financial operations, which my understanding is, is getting payments out the day they receive our authorization or within a day."[6],[7]

72. In this matter, the Plaintiff is not seeking to "fast-track" pendency funding, but rather request a reasonable time period in accordance with the tuition and special transportation agreements.

73. DOE does not resolve or settle DPCs, contributing to its backlog and notoriously slow calendars.

74. Historically, DOE has never held a proper or timely Resolution Meeting with Plaintiff, as required by the IDEA, to discuss resolving or settling the Plaintiff's claims.

75. The Plaintiff reserves the right to move for reasonable attorneys' fees as the prevailing party in the underlying administrative proceedings, as well as here, as this litigation is necessary because of Defendants' continued refusal to follow the mandates of the IDEA.

**AS AND FOR THE FIRST CAUSE OF ACTION**

76. Plaintiff repeats, realleges, and reaffirms each allegation set forth above as if set forth more fully herein.

77. An action that alleges a violation of the pendency provision falls under at least one exception to the IDEA's requirement for the exhaustion of administrative remedies before filing suit in federal court.

78. Pendency provides stability and consistency in the education of students with a disability and prevents schools from unilaterally making decisions that would otherwise exclude disabled students from school, as was the practice before the enactment of the IDEA.

---

[6] See https://citymeetings.nyc/meetings/new-york-city-council/2025-01-30-0100-pm-committee-on-education/chapter/does-current-process-for-paying-providers/

[7] See https://citymeetings.nyc/meetings/new-york-city-council/2025-01-30-0100-pm-committee-on-education/chapter/timeline-expectations-for-non-delayed-payments/

79. A student's last agreed-upon placement—a final, unappealed administrative order—establishes a student's current educational placement for pendency.

80. Defendants have violated the Plaintiff's right to a FAPE under the IDEA.

81. Defendants have violated Plaintiff's rights to their stay-put placements.

82. Defendants have violated the IDEA by implementing broad and indiscriminate policies, practices, and procedures, as well as policies, practices, and procedures contrary to the IDEA.

83. Defendants have violated Plaintiff's procedural and due-process rights under the IDEA.

84. Defendants violated Plaintiff's rights under 42 U.S.C. § 1983 by failing to have adequate policies, procedures, protocols, and training to ensure that the long-standing provisions of the IDEA and New York State special education laws are being implemented.

85. Defendants have violated the rights of Plaintiff under N.Y. Educ. Law §§ 3202, 3203, 4401, 4404, and 4410, and § 200 (McKinney) of the Regulations of the New York State Commissioner of Education, 8 N.Y. COMP. CODES R. REGS.

86. As a direct and proximate result of Defendants' violations as alleged herein, Plaintiff has suffered damages.

87. The Student here currently attends iBRAIN and has a final administrative order establishing iBRAIN, along with special transportation services, as her Pendency placement for the 2025-2026 SY.

88. Plaintiff is entitled to a declaration that iBRAIN, along with special transportation services, is the Student's Pendency placement for the 2025-2026 SY, and that DOE is required to fund that Pendency placement during the pendency of the Student's relevant due process proceedings in accordance with the tuition and special transportation agreements.

**AS AND FOR THE SECOND CAUSE OF ACTION**

89. Plaintiff repeats, realleges, and reaffirms each allegation set forth above as if set forth more fully herein.

90. As the LEA, Defendants are legally responsible for ensuring compliance with the IDEA within New York City.

91. Defendants have violated, and are violating, the rights of the Parent and Student by failing to implement the uncontested Pendency placement/programs, as required by the IDEA.

92. Defendants failed to properly and timely establish and fund the Pendency placements/programs for the 2025-2026 SY in accordance with the Plaintiff's respective agreements for tuition and special transportation service.

93. Defendants have failed to establish effective policies and procedures for identifying, implementing, and funding special education Student's Pendency placements/programs, and then failed to abide by any policies and procedures.

94. Defendants have violated Plaintiff's rights under 20 U.S.C. § 1415 and 34 C.F.R. § 300.515(a) and deprived Plaintiff of a free appropriate public education under 20 U.S.C. § 1400 *et seq.* and New York State's Education Law.

95. Plaintiff's rights under the IDEA are enforceable under 42 U.S.C. § 1983 as Defendants have acted under color of state law, as well as under 20 U.S.C. § 1415.

96. Defendants have acted with deliberate indifference in engaging in the policies, practices, and customs that have led to these violations, despite clear notice that their policies, practices, and customs have caused the violations, and without correcting the policies, practices, and customs. These policies, practices, and customs constitute Defendants' de facto unlawful, illegal, and improper policy.

97. As a direct and proximate result of Defendants' violations as alleged herein, Plaintiff has suffered damages.

98. Plaintiff is entitled to an injunction directing Defendants to fully fund the Student's Pendency placement at iBRAIN, along with special transportation services, directly to the respective providers and pursuant to the relevant agreements between the Plaintiff and said providers, including any accrued Late Fees, during the pendency of the Student's relevant due process proceedings.

## AS AND FOR THE THIRD CAUSE OF ACTION

99. Plaintiff repeats, realleges, and reaffirms each allegation set forth above as if set forth more fully herein.

100. Defendants are legally responsible for ensuring compliance with the New York Education Law, as well as the IDEA, within New York City.

101. Defendants have violated, and are violating, the rights of Plaintiff and her disabled Plaintiff-Student by failing to implement Plaintiff's Pendency placements/programs, automatically and as required under the IDEA and New York Education Law, and to properly fund the same for the 2025-2026 school year.

102. Defendants have failed to fund Plaintiff's Pendency placements/programs in a timely and comprehensive manner in accordance with the Plaintiff's respective agreements for tuition, and special transportation services. Continued delays in funding pendency may incur Late Fees associated with the withholding of pendency funding for tuition and special transportation services.

103. Defendants have failed to establish effective policies for identifying, implementing, and funding special education Student's Pendency placements/programs and have consistently failed to follow their own policies and procedures.

104. Defendants have violated Plaintiff's rights under N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5) and have deprived Plaintiff of a FAPE under the New York Education Law and the IDEA.

105. Plaintiff's rights under the New York Education Law are enforceable under N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(k)(3), and the IDEA, as well as under this Court's equitable powers.

106. As a direct and proximate result of Defendants' violations as alleged herein, Plaintiff has suffered damages.

107. As a result of these violations, Plaintiff is entitled to injunctive and declaratory relief, the nominal relief requested herein, other equitable relief, and costs and attorneys' fees.

**AND AS FOR THE FOURTH CAUSE OF ACTION**

108. Plaintiff repeats, realleges, and reaffirms each allegation set forth above as if set forth more fully herein.

109. The Fourteenth Amendment prohibits the deprivation of Plaintiff-Student's right to an education, which is implicit in the concept of ordered liberty, and mandated by the New York State Constitution.

110. Defendants' failure to ensure the Student's uncontested Pendency placements/programs for the 2025-2026 school year have been implemented and funded has denied Student her rights to a FAPE. In so doing, Defendants have violated the Due Process Clause of the Fourteenth Amendment.

111. Defendants have been on notice of systemic unlawful delays and failures in implementing Pendency placements/programs and have acted with deliberate indifference and gross misjudgment.

112. Defendants' failure to implement Plaintiff's Pendency programs has caused discrimination against the Student by denying her access to a FAPE.

113. Defendants have acted under color of law, and their actions, policies, and procedures lack sufficient objective standards to remedy their violations, allowing for ad hoc, arbitrary, and discriminatory implementation of Plaintiff's Pendency placements.

114. As a direct and proximate result of Defendants' violations as alleged herein, Plaintiff has suffered damages.

115. As a result of these violations, Plaintiff is entitled to injunctive and declaratory relief, other equitable relief, and costs and attorneys' fees.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully request that this Court:

1. Enter a Declaratory Judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that the Student's Pendency program/placement is at iBRAIN throughout the administrative and judicial proceedings relative to their DPCs for the 2025-2026 SY. This declaration should include that the Student is entitled to full funding of tuition at iBRAIN, along with all related services, including but not limited to special transportation services, with the respective private service provider, in accordance with the agreements between Plaintiff and the providers, during the 2025-2026 SY.

2. Issue an Injunction ordering Defendants to:

   a. Comply with the IDEA's Pendency Provision under 20 U.S.C. § 1415(j), and eliminate any requirement that compels Parents to wait months in violation of the IDEA to obtain an "interim order" from an Impartial Hearing Officer ("IHO") or accept a pendency form/agreement from DOE. This injunction should ensure that the Student's "last agreed-upon" placement is maintained without delay, as a matter of law, in accordance with their respective 2025-2026 SY agreements for tuition and special transportation services.

b. Implement Pendency Funding for the Student's educational program in the ordinary course of business, without undue delay, so as to prevent disruption in the provision of services to the Student in accordance with the respective agreements for tuition and special transportation services, where applicable. Plaintiff further request that this Court order Defendants to ensure pendency funding begins no later than 35 days from the date of this Court's order, consistent with the Order in *LV v. New York City Dep't of Educ.*, No. 03-CV-9917 (LAP), 2021 WL 663718 (S.D.N.Y. February 18, 2021),[8] with regular updates to ensure continued compliance. Plaintiff further request that this Court order Defendants to make payments in accordance with the respective agreements for tuition and special transportation services, including any incurred Late Fees associated with delayed payments.

c. Comply with Final Orders and Pendency Orders by immediately implementing and adhering to all final, unappealed administrative orders, including the funding of the Student's tuition, related services, transportation, and any other provisions mandated by these orders. Plaintiff request that this Court hold Defendants accountable for their systemic failure to enforce these orders and to ensure that no further delays or violations occur.

d. Pay Costs and Attorneys' Fees associated with maintaining this action, including reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B), 42 U.S.C. § 1988(b), and 34 C.F.R. § 300.517(a)(1)(i).

3. Grant such other, further, and different relief as this Court may deem just, proper, and equitable, including compensatory education, damages where appropriate under the 42 U.S.C. § 1983 claims, and other equitable remedies to ensure the continuation of FAPE for the Student during the pendency of these proceedings.

Dated: July 11, 2025
New York, New York

Respectfully submitted,
Liberty & Freedom Legal Group, Ltd
*Attorneys for Plaintiff*

---

[8] In *LV v. NYC DOE*, No. 03-CV-09917 (LAP), this Court held: "In December 2007, AFC and Milbank, on behalf of Lead Plaintiff and the Class, entered into a settlement agreement with the DOE that provides injunctive and compensatory relief to class members. The Settlement was approved by the Honorable Richard J. Holwell at the Settlement Fairness Hearing held on April 10, 2008. Under the settlement, the DOE is required to implement all impartial hearing orders within the time frame stated in the order or 35 calendar days of the date of the order if no time is specified. Orders that require immediate action must be implemented within 7 business days." *See* https://advocatesforchildren.org/case/l-v-v-nyc-department-of-education/ Furthermore, Judge Loretta A. Preska issued an order in the *LV* class action: "DOE's only lawful course of action is to implement those Orders, full stop." No. 03-CV-09917-(LAP), ECF #258 (February 18, 2021).

By: ***/s/ Nicholas A. Marricco***
Nicholas A. Marricco, Esq.
105 East 34th Street, Suite 190
New York, New York 10016
(646) 850-5035
nick@pabilaw.org