USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/6/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

EILEEN MENDEZ, as Parent and Natural Guardian of A.C., and EILEEN MENDEZ, Individually,

                Plaintiff,

-against-

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education and the NEW YORK CITY DEPARTMENT OF EDUCATION,

                Defendants.

-------------------------------------------------------x

25-cv-5746 (CM)

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

McMahon, J.:

Plaintiff Eileen Mendez, individually and on behalf of her minor son, A.C., sued the New York City Department of Education ("DOE") and Melissa Aviles-Ramos in her official capacity as Chancellor of DOE (collectively, "Defendants"), pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Plaintiff seeks to enforce A.C.'s pendency rights for the 2025–2026 school year under § 1415(j) of the IDEA, as established by the final administrative decision issued on January 24, 2025 – SRO Order No. 24-476 – which required the DOE to fund A.C.'s tuition and transportation services at the International Academy of the Brain ("iBRAIN") for the 2024–2025 school year.

The issue before the Court is whether Plaintiff is entitled to a preliminary injunction requiring Defendants to pay A.C.'s educational costs for the 2025–2026 school year immediately,

1

rather than at the end of this case if the plaintiff prevails. For the reasons set forth below, the Court concludes that Plaintiff is not entitled to such relief. Plaintiff's motion, Dkt. No. 7, is DENIED.

I. **BACKGROUND**

a. **Individuals with Disabilities Education Act**

The Individuals with Disabilities Education Act, 84 Stat. 175, as amended, 20 U.S.C. § 1400 *et seq.*, requires states that receive federal special education funding to provide children with disabilities "a free appropriate public education" ("FAPE"), § 1412(a)(1)(A). A FAPE must be tailored to meet a child's "unique needs" and supported by the "related services" necessary to allow the child to benefit from that instruction. §§ 1401(9), (26), (29). To accomplish this, school districts must create an individualized education program ("IEP") for each qualifying child. 20 U.S.C. § 1414(d); *Honig v. Doe*, 484 U.S. 305, 311 (1988). In New York, Committees on Special Education ("CSEs") are responsible for developing IEPs. N.Y. Educ. Law § 4402(1)(b)(1).

If a parent believes that the IEP is inadequate and that the DOE failed to provide her child with a FAPE, she may file a "due-process complaint" ("DPC"), entitling her to an "impartial due process hearing" before an IHO. § 1415(b)(6); N.Y. Educ. Law § 4404(1); *see also DPC. M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015). The IHO then delineates the scope of the DOE's reimbursement obligations pursuant to the IDEA's stay-put provision either in a pendency order – if the impartial hearing is ongoing – or a Finding of Facts and Decision ("FOFD") – if the hearing has concluded. *See Abrams v. Carranza*, No. 19 Civ. 4175 (AJN), 2019 WL 2385561, at *1 (S.D.N.Y. June 6, 2019). Under the *Burlington/Carter* test, reimbursement is available only if "(1) the proposed IEP failed to provide the student with a FAPE; (2) the parent's unilateral placement was appropriate; and (3) equitable considerations support the claim." *Reyes ex rel. R.P. v. New York City Dep't of Educ.*, 760 F.3d 211, 215 (2d Cir. 2014). An IHO's decision

may be appealed to a State Review Officer ("SRO"). N.Y. Educ. L. § 4404(2); 20 U.S.C. § 1415(g)). Either party may seek review of the SRO's decision in state or federal court. N.Y. Educ. Law § 4404(3); 20 U.S.C. § 1415(i)(2)(A).

Under IDEA's stay-put provision, while a parent's claims are being litigated – either administratively or in court – the child is entitled to "remain in the then-current educational placement" at public expense "until all such proceedings have been completed." 20 U.S.C. § 1415(j). The "then-current educational placement" typically refers to a child's last agreed-upon educational program before the DPC was filed. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020). The stay-put provision "seeks to maintain the educational status quo while the parties' dispute is being resolved." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014). The Second Circuit "has characterized § 1415(j) as 'in effect, an automatic preliminary injunction,' given that it 'substitutes an absolute rule in favor of the status quo'—that is, the maintenance of a student's then-current educational placement—for the standard preliminary injunction analysis involving irreparable harm, the likelihood of success on the merits, and the balance of hardships." *Mendez v. Banks*, 65 F.4th 56, 62 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024) (citation omitted) (*Mendez I*).

However, requests beyond maintaining the "then-current educational placement" – for example, seeking immediate reimbursement of pendency tuition – remain subject to the traditional preliminary injunction factors, because the stay-put provision "does not create an entitlement to immediate payment." *Id.* at 63–64. Plaintiff and her counsel are well aware of this, as the case establishing that rule in this Circuit was one they themselves brought on behalf of A.C.

### b. Facts and Procedural History

Plaintiff is the parent and natural guardian of A.C., a minor child with a disability as defined by 20 U.S.C. § 1401(3). Dkt. No. 1, at 8.

On June 12, 2025, Plaintiff sent a Ten-Day Notice ("TDN") to the DOE because she disagreed with the CSE's recommended IEP for A.C.'s 2025–2026 school year. *Id.* at 13.

On July 7, 2025, Plaintiff brought a Due Process Complaint ("DPC") against the DOE for the 2025–2026 school year, alleging – among other things – that DOE did not provide A.C. a FAPE, that International Academy of the Brain ("iBRAIN") is an appropriate unilateral placement, and that equities favored a request for direct payment of the unilateral placement. *Id.* at 2, 4–10 (citing U.S.C. § 1415(i) *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i)). Pursuant to 20 U.S.C. § 1415(j), Plaintiff requested that an IHO issue a pendency order directing the DOE to fund, for the 2025–2026 school year, (1) A.C.'s tuition at the International Academy of the Brain ("iBRAIN"), (2) A.C.'s transportation services, and (3) A.C.'s nursing services. *Id.* at 27.

The DPC was assigned IHO Case No. 297049. Dkt. No. 1, at 10. Impartial Hearing Officer Natasha Pierre was appointed to conduct hearings and address Plaintiff's DPC. Dkt. No. 1-1, at 2. As far as this Court is aware, Officer Pierre has not yet issued a decision. Once she does, the losing party will have to choose between accepting the IHO's ruling or appealing for review by a State Review Officer (SRO). An SRO decision would then be appealable to this court.

## II.  DISCUSSION

### a. Applicability of the Stay-Put Provision

Plaintiff seeks an order establishing iBRAIN as the students' pendency placement for the 2025–2026 school year. Dkt. No. 8, Pl.s' Mem. Supp. Mot. Prelim. Inj., at 11–14. As previously

4

discussed, the IDEA's stay-put provision entitles children with disabilities to "remain in the[ir] then-current educational placement" at public expense "during the pendency of any proceedings." 20 U.S.C. § 1415(j). This provision "seeks to maintain the educational status quo while the parties' dispute is being resolved." *Cornwall Cent. Sch. Dist.*, 752 F.3d at 152. A parent seeking to invoke the stay-put provision of the IDEA need not exhaust her administrative remedies. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002).

To determine a child's "then-current educational placement" for purposes of the stay-put provision, a court looks to "(1) the placement described in the child's most recently implemented IEP; (2) the operative placement actually functioning at the time when the stay-put provision of the IDEA was invoked; or (3) the placement at the time of the previously implemented IEP." *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (citation omitted).

Plaintiff does not need any preliminary injunction to ensure that her child remains at iBRAIN during the pendency of her challenge to A.C's 2025-26 IEP, because the DOE concedes that iBRAIN was A.C.'s operative placement at the time Plaintiff invoked the stay-put provision, and so is the child's pendency. *See* Dkt. No. 14, Defs.' Opp'n Pl.'s Mot. Prelim Inj., at 13 (stating that A.C. "is currently attending iBrain and continues to receive educational services there'). A.C. was already enrolled at iBRAIN for prior school years, *see* Dkt.No. 1-1, at 5, and at no point does the DOE dispute that she should remain there pending adjudication of the challenge to the 2025–2026 IEP, *see e.g.*, Dkt. No. 14, at 13 (stating that '[A.C.'s] placement is not at risk').

But this lawsuit is not about protecting A.C.'s placement pendent lite. Rather, the actual purpose of this lawsuit is to force the City to pay the cost of A.C's education at iBRAIN and the associated transportation costs now, rather than at the end of the administrative and/or judicial

5

proceeding. This court declines to award such relief. Indeed, Plaintiff and her attorney have already litigated this very issue, through this court and up to the Second Circuit, where the precise relief they here seek was denied.

In *Mendez I*, our very plaintiff, Eileen Mendez – suing on behalf of her daughter A.C., and represented by her current attorney, Rory Bellantoni, Esq., – sought review of a district court order that had denied a motion by Mendez and other plaintiffs to obtain "advance" payment for the cost of their children's pendency placement and associated transportation while challenges to the children's IEP's were wending their way through the administrative/judicial review process. 65 F.4th at 58–60. The Second Circuit, affirming a ruling by my colleague Judge Vyskocil, held that IDEA's stay-put provision does not "create an entitlement to immediate payment or reimbursement." *Id.* at 63. It stated succinctly that the IDEA does not "entitle Plaintiffs to an automatic injunction directing the DOE to fund their children's pendency placement. . . . The IDEA's stay-put provision entitles families to automatic relief with respect to educational placement but not with respect to payments. Parents seeking educational payments may still be entitled to automatic injunctive relief if they can show that a delay or failure to pay has threatened their child's placement. But absent such a showing, the IDEA does not compel the state to accelerate its disbursement of funds." *Id.* at 59.

Plaintiff now comes before this court and argues that § 1415(j)'s stay-put provision entitles her to an "automatic preliminary injunction" thereby relieving her of the burden to show irreparable harm. Dkt. No. 8, Pl.'s Mem. Supp. Mot. Prelim. Inj., at 9. But that is precisely the argument the Second Circuit rejected in *Mendez I*. The City has conceded the child's "then-current educational placement" is at IBrain; that is all that the plain text of § 1415(j) requires. That being so, Plaintiff can only obtain payment of the cost of the placement pendente lite if there is evidence

demonstrating that the child is in danger of losing her placement absent payment. There is no such evidence in the record before me. Binding precedent forecloses Mendez from arguing, as she does here, that she is entitled to immediate payment for that placement without satisfying the traditional standards for preliminary injunctive relief. *See also Beckford v. Carranza*, No. 21-CV-0462(EK)(PK), 2021 WL 796085, at *1 (E.D.N.Y. Mar. 2, 2021) (rejecting plaintiffs' argument that funding of pendency placement should happen automatically absent a showing that placement itself is in jeopardy); *Abrams v. Carranza*, No. 20-CV-5085 (JPO), 2020 WL 4504685, at *1 (S.D.N.Y. Aug. 5, 2020) (same).

In light of the holding in *Mendez I*, in order to obtain a preliminary injunction, Plaintiff would have to show that she is likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in her favor, and that an injunction is in the public interest. *Hudson Shore Assocs. Ltd. P'ship v. New York*, 139 F.4th 99, 106 (2d Cir. 2025). On the record before me, she has done none of the above. Irreparable harm would follow if there were evidence that A.C. faces the imminent prospect of being disenrolled from iBRAIN if the City follows its usual and customary payment practice. But there is no such evidence in the record. *See* Dkt. No. 8, Pl.'s Mem. Supp. Mot. Prelim. Inj., at 22; Dkt. No. 17, Pl.'s Reply Supp. Mot. Prelim. Inj., at 12. Therefore, Plaintiff is not eligible for "immediate payment" relief. *See Moonsammy v. Banks*, No. 24 Civ. 2616 (PAE), 2024 WL 2831042, at *7 (S.D.N.Y. June 3, 2024) (holding, where parents did not adduce evidence that child's educational placement was in jeopardy, "that the Department need only pay the Moonsammys via its ordinary payment procedures" (citation omitted)); *Grullon v. Banks*, No. 23 Civ. 5797, 2023 WL 6929542, at *5 (S.D.N.Y. Oct. 19, 2023) (denying application for immediate payment where "Plaintiffs have made no showing that [child] [wa]s in danger of losing their placement at iBRAIN"); *Ramos v.*

*Banks*, No. 24 Civ. 5109, 2025 WL 1455703, at *8 (S.D.N.Y. May 21, 2025) (concluding same where plaintiff failed to substantiate threat of "imminent disenrollment").

The City's ordinary practice is to pay and required fees when administrative and/or judicial challenges to the IEP are resolved – not to pay in advance and then have to chase a private party like iBRAIN or Sisters Travel for reimbursement should it prevail. Defendants, for their part, have assured the Court that they "will honor their obligations and remit any amounts owed pursuant to pendency once the parties have fully determined the scope of those pendency obligations before an IHO." Dkt. No. 14, Defs.' Mem. Opp'n. Pl.'s Mot. Prelim. Inj., at 10. I have no reason to disbelieve them.

Plaintiff also argues that she is entitled to a preliminary injunction clarifying the "scope" of the DOE's pendency obligations for the 2025–2026 school year. Dkt. No. 8, at 15–16. But this is simply the argument she lost in *Mendez I* dressed up in new clothes. The "scope" of A.C.'s pendency needs no clarification – it is attendance at iBRAIN, with associated transportation. That is what DOE has acknowledged; that is what A.C. is getting today. What Plaintiff wants is a holding that the "scope" of her child's pendency includes up-front payment of fees – a contention she has already litigated and lost in *Mendez*. To the extent Plaintiff might mean something else by her use of the phrase "scope" of the pendency, that issue is not ripe for judicial review, because the parties are currently litigating the scope of an appropriate IEP for A.C. and the City's concomitant obligation to pay for private schooling before the IHO. *See Mendez*, 65 F.4th at 61 (concluding same because plaintiff's request for preliminary injunctive relief "relie[d] on state administrative decisions that [were] not yet . . . made").

8

Having already litigated – and lost – this precise issue before the Second Circuit, counsel's decision to press the same argument again, without making any showing of irreparable injury, borders on the frivolous. If it happens again, I will consider it sanctionable.

## Conclusion

In sum, because the "stay-put provision entitles families to automatic relief with respect to educational placement but *not* with respect to payments," Plaintiff is not entitled to a preliminary injunction. *See Mendez* 65 F.4th at 59 (emphasis added). Since Plaintiff has not met her burden – has not even tried to meet her burden – to establish entitlement to relief under traditional preliminary injunction standards, her motion for a preliminary injunction requiring the DOE to pay A.C.'s tuition at iBRAIN and associated transportation costs to Sisters Travel is DENIED.

The Clerk of Court is directed to terminate the motion at Dkt. No. 7 and to remove it from the court's list of open motions.

This constitutes the decision and order of the Court. It is a written decision.

Dated: October 6, 2025

                                                                         U.S.D.J.

BY ECF TO ALL COUNSEL