UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————— x

EILEEN MENDEZ, as Parent and Natural Guardian
of A.C., and EILEEN MENDEZ, Individually,

Plaintiff,

-against-

25-cv-5746 (CM)

MELISSA AVILES-RAMOS, in her official
capacity as Chancellor of the New York City
Department of Education and the NEW YORK
CITY DEPARTMENT OF EDUCATION,

Defendants.
——————————————————————————— x

## OPINION AND ORDER

McMahon, J.:

On October 10, 2025, Plaintiff Eileen Mendez, individually and on behalf of her minor son,
A.C., filed a motion for a temporary restraining order and preliminary injunction, seeking an order
compelling the Department of Education ("DOE") "to immediately issue payments for outstanding
tuition, transportation, and nursing services owed,, [sic] for Plaintiffs for the 2025–2026 school
year, including any late fees associated with the untimely payment and withholding of funding by
DOE, in accordance with the respective tuition, transportation, and nursing service agreement."
Dkt. No. 32.

*First*, as an initial matter, Plaintiff has never sought nursing services in the history of this
case, nor does any request for nursing services appear in Plaintiff's prayer for relief. *See* Dkt. No.
1, at 18. It is abundantly clear that Plaintiff's counsel has carelessly included in these motion
papers allegations from other cases that have no pertinence here.

1

*Second*, this is Plaintiff's second motion for a preliminary injunction seeking the exact same relief. *See* Dkt. No. 8. The Court denied Plaintiff's first motion because Plaintiff failed to demonstrate that an injunction was needed to ensure that her child remained at the International Institute for the Brain (iBRAIN) while her challenge to A.C.'s 2025–26 IEP was pending. *See* Dkt. No. 14, Defs.' Opp'n Pl.'s Mot. Prelim. Inj., at 13 (stating that A.C. "is currently attending iBRAIN and continues to receive educational services there"); *id.* (noting that "[A.C.'s] placement is not at risk").

Plaintiff's new memorandum of law largely duplicates the arguments she has already made – arguments that this court has rejected. *Compare* Dkt. No. 29 *with* Dkt. No. 8. She again maintains that the IDEA's stay-put provision, 20 U.S.C. § 1415(j), automatically entitles her to immediate payment of educational costs incurred during A.C.'s pendency. Dkt. No. 29, at 10 (stating that "the 'stay-put' provision of the IDEA acts as an automatic preliminary injunction."). But as Ms. Mendez and her lawyers well know, the United States Court of Appeals for the Second Circuit has squarely rejected that argument – in a case brought by Ms. Mendez herself. *Mendez v. Banks*, 65 F.4th 56, 62 (2d Cir. 2023). Following the Circuit's ruling, this court has already made it abundantly clear that the stay-put provision operates as "an automatic preliminary injunction" only insofar as it protects the child's right to remain in his or her then-current educational placement and ensures funding necessary to maintain that placement; it does not create an entitlement to immediate payment unless the parents establish that a delay or failure to pay jeopardizes their child's educational placement. *Mendez v. Aviles-Ramos*, No. 25-CV-5746 (CM), 2025 WL 2838464, at \*2 (S.D.N.Y. Oct. 6, 2025) (citing *Mendez*, 65 F.4th at 63). Plaintiff's attorneys have been similarly rebuffed by a number of my colleagues, who have been subjected to the same meritless argument in cases brought by other parents. *See, e.g., Nicholls v. Aviles-Ramos*,

2

No. 25-cv-7569 (S.D.N.Y. Oct. 27, 2025), Dkt. No. 25; *Frias v. Aviles-Ramos*, No. 25-cv-5936, 2025 WL 2494336, at *4 (S.D.N.Y. Aug. 29, 2025); *Bruckauf v. Aviles-Ramos*, No. 25- cv-5679 (S.D.N.Y. Aug. 25, 2025), Dkt. No. 16; *Mondano v. Banks*, No. 24-cv-8241, 2025 WL 1984427, at *2 (S.D.N.Y. July 17, 2025); *Ramos v. Banks*, Nos. 24-CV-5109, 24-cv-5136, 2025 WL 1455703, at *7-8 (S.D.N.Y. May 21, 2025); *Ogunleye v. Banks*, No. 23-CV-9092, 2025 WL 1078301, at *2 (S.D.N.Y. Mar. 27, 2025); *Moonsammy v. Aviles-Ramos*, 25-cv-5923, 2025 WL 2452350, at *1 (S.D.N.Y. Aug. 26, 2025); *Bruckauf v. Banks*, No. 24-cv-5136 (S.D.N.Y. Aug. 1, 2024), Dkt. No. 25; *Ramos v. Banks*, No. 24-cv-5109 (S.D.N.Y. Aug. 1, 2024), Dkt. No. 33; *Phillips v. Banks*, No. 23-cv-2140, Minute Entry from April 20, 2023 (S.D.N.Y. Apr. 20, 2023); *Crosley v. Banks*, No. 22-cv-7101 (S.D.N.Y. Nov. 29, 2022), Dkt. No. 28; *Mendez v. Banks*, No. 22-cv-8397, 2022 WL 6807537, at *1-2 (S.D.N.Y. Oct. 11, 2022), *aff'd*, 65 F.4th 56 (2d Cir. 2023); *Hidalgo v. Porter*, No. 21-cv-10794 (S.D.N.Y. Apr. 29, 2022), Dkt. No. 33; *Abrams v. Carranza*, No. 20-cv-5085, 2020 WL 4504685, at *1 (S.D.N.Y. Aug. 5, 2020).

The only difference between this application and the motion that this court previously denied is that Plaintiff now argues that her child's educational placement is at risk because "the entire iBRAIN program is at imminent risk of closing because of DOE's chronic delays in funding its legal obligations." Dkt. No. 29, Pl.'s Mem. Supp. TRO & Prelim. Inj., at 15. This, she contends, entitles her to a preliminary injunction under *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023), because the child's placement is at risk if the school closes. To support her assertion that iBRAIN is in danger of closing, Plaintiff has submitted to the court a declaration from Dr. Daniel Sebbag, the Chief Operating Officer of iBRAIN. Dr. Sebbag avers that, without immediate payment, "iBRAIN will be forced into a financial crisis that *could result in the closure* of the program." Dkt. No. 30, at 7 (emphasis added).

The Plaintiff and her lawyers have crafted their argument carefully. They do not assert that iBRAIN *will* close if DOE does not advance payments that may ultimately have to be refunded should Plaintiff's challenge to A.C.'s IEP for this school year fail. Rather, they assert only that it "could" close. Similarly, in her reply brief, Mendez (or her lawyer, or iBRAIN, or whoever actually controls this lawsuit) takes the position that the DOE's delays in making pendency payments "*may* lead to reductions or suspensions in services." Dkt. No. 38, Pl.s Reply Supp. TRO & Prelim. Inj., at 6 (emphasis added) – not that they *actually will* lead to any reductions or suspensions. No one attests that there has actually been any reduction or suspension of services to A.C.

The Plaintiff's motion and supporting documentation places squarely in issue the financial status of iBRAIN and those who own and control it. Two of my colleagues have already recognized that they were not required to take Plaintiff's assertion about the imminent insolvency of iBRAIN at face value. Confronted with preliminary injunction motions just like this one, Judges Furman and Cronan ordered iBRAIN and its principals to provide discovery about their financial situation. *Fiallos v. Aviles-Ramos*, No. 25-cv-7281 (S.D.N.Y. Oct. 20, 2025), Dkt. No. 53; *Frias v. Aviles-Ramos*, No. 25-cv-5936 (S.D.N.Y. Sept. 11, 2025), Dkt. No. 44-2, at 2. Interestingly, the Plaintiffs in *Fiallos* and *Frias* responded to Judges Furman's and Cronan's orders by withdrawing their motions for a preliminary injunctive compelling the DOE to make immediate payment. Fiallos Dkt. No. 54; Frias Dkt. No. 46. Their response (which is very unlike the response one would expect from parents who were suffering immediate injury while fighting for their disabled children's rights) certainly suggests that iBRAIN is not in imminent financial danger – or, perhaps, that it has other reasons for not wanting a court to explore its finances.

But explore its finances we will. I am no more inclined than were my colleagues to credit Plaintiff's untested assertion that the DOE's failure to advance funds to pay for A.C.s' pendency placement while Mendez's challenge to her IEP is under review will jeopardize iBRAIN's status as on ongoing institution. Their orders directing that discovery be taken into the school's and its owners' financial circumstances were entirely proper, because the plaintiffs in those cases put iBRAIN's financial condition directly in issue. So to here.

Plaintiff bears the burden of demonstrating that the DOE's alleged delay in payments poses an imminent threat to A.C.'s educational placement. She must substantiate her claim through competent evidence, rather than speculation. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 290 (2d Cir. 2003) ("A plaintiff seeking injunctive relief bears the burden of demonstrating it will suffer 'real and imminent, not remote, irreparable harm' in the absence of a remedy." (citation omitted)). Since iBRAIN has a contract with Plaintiff obligating it to provide A.C. with educational services during the 2025–26 school year – an obligation from which it cannot walk away – there is no reason for this court to conclude that A.C's pendency is in any danger unless the school really is about to close.[1]  Plaintiff has submitted an affidavit that, while worded in a weasely way, essentially asserts that A.C.'s pendency is endangered by iBRAIN's parlous financial condition. I would not even consider granting the requested relief without taking a deep dive into the school's

---

[1] Even if it is about to close, I question whether that is of any relevance; I note that my colleague Judge Failla, in yet another iBRAIN lawsuit, has questioned whether, by making premature payments, DOE is responsible for ensuring that iBRAIN remains in operation, *see Grullon et al v. Banks, et al.*, 23-cv-10388 (KPF), Tr. of Jan. 5, 2024 Hrg., Dkt. No. 39-3, at 58:7-12 ("THE COURT: I don't think it's DOE's obligation to avert a close down of the school. . . . The children can be educated elsewhere, sir."). It is an interesting observation on her part. But I need not address that issue just yet.

financial condition and testing that assertion.[2]  Plaintiff has done nothing to compile a factual

record that would entitle her to preliminary injunctive relief, especially since she has to offer

evidence that would allow a district court to distinguish this case from the Court of Appeals'

decision in *Mendez.*

Discovery is also urgently needed so the court can decide whether Plaintiff has standing to

bring her request for injunctive relief – a critically important issue that must be decided before we

can progress to the merits of Plaintiff's application.

On the current record, it is not clear whether Plaintiff satisfies the threshold requirement of

demonstrating a concrete injury sufficient to support Article III standing on her emergency motion.

The Supreme Court has made clear that "bare procedural violation[s] divorced from any concrete

harm" do not suffice.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021).  As the Court

explained, "Congress's creation of a statutory prohibition or obligation and a cause of action does

not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a

concrete harm."  *Id.* at 426.

Although a parent's contractual obligation to pay educational costs is sufficient to support

standing to sue for direct payment under the IDEA, *E.M. v. New York City Dep't of Educ.*, 758

F.3d 442, 457–61 (2d Cir. 2014), Article III standing "is not dispensed in gross."  *TransUnion*,

594 U.S. at 431.  A plaintiff must establish standing "for each claim" and "for each form of relief

---

[2] It is not as though DOE has not paid and is not paying iBRAIN for whatever it is doing to educate A.C. Most recently, Defendants have represented to the Court that they "will provide tuition and transportation funding as set forth in the [September 3, 2025] pendency order . . . covering the period from 7/7/25 to 12/31/25, and Plaintiffs should expect to receive payment within the next two to three weeks." Dkt. No. 35, at 6. In other words, once the administrative appeal that IDEA's statutory scheme contemplates has run its course, the City has always, to my knowledge, paid the school. Which means money is certainly coming in to iBRAIN's coffers. If iBRAIN is indeed in parlous financial condition, one might well ask where that money is going.

that is sought." *Id.*; *see also Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). In other words, the Plaintiff must establish that she has standing to sue for a preliminary injunction compelling immediate payment of disputed pendency fees, and she must do so because she (not because the school iBRAIN) is suffering a "real or immediate threat" of injury. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)). Plaintiff's bare allegations that the DOE's delays in making pendency payments "*may* lead to reductions or suspensions in services," Dkt. No. 38, at 6 (emphasis added), does not demonstrate any real or immediate threat of injury to the Plaintiff. Her allegation that there is the possibility of harm is precisely the kind of "hypothetical" and "conjectural" sources of injury that fails to establish Article III standing to support a claim under § 1415(j). *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). Nor does such speculation establish irreparable harm. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Without discovery, it is simply not possible to ascertain whether we have a standing problem here; we certainly cannot make any finding of irreparable injury.

So there will be no decision on Plaintiff's motion for a preliminary injunction until iBRAIN submit to discovery into its finances – including depositions, interrogatories, and the production of books, records, and bank statements going back at least two years. DOE should submit discovery demands to the court and counsel for Plaintiff within ten days and serve them, accompanied by a third party subpoena, on iBRAIN. The third-party witnesses will have ten business days to produce any requested documents and must submit to depositions within twenty business days thereafter. Dr. Sebbag, whose declaration raises the issue of iBRAIN's financial condition, should be deposed. iBRAIN itself appears to be operated by Patrick Donohue, who also operates Liberty & Freedom Legal Group Ltd. (also known as the "Donohue Firm"), the law

firm that has appeared on behalf of Plaintiff-Parent Mendez. If DOE wishes to depose Patrick Donohue, it may do so. It may also take discovery from Sisters Transportation, the firm that transports A.C. to and from school, and which seems to be owned by Mr. Donohue's wife, *see* Frias Dkt. No. 38, at 19.

### Sanctions

If this order directing discovery is met in the same manner as the orders issued by Judges Cronan and Furman – which is to say, by withdrawal of the pending motion for a preliminary injunction – then I will draw the entirely logical conclusion that iBRAIN is not, in fact, in imminent risk of closure, despite the fact that a lawyer admitted to practice in this district (Nicole Lancia) has signed a pleading so asserting – presumably after making an appropriate inquiry. I remind Ms. Lancia and her employers, Rory Bellantoni, Esq. and the Liberty & Freedom Legal Group LLC, that Federal Rule of Civil Procedure 11(c)(3) empowers the Court to initiate sanctions proceedings against an attorney who is suspected of violating that rule *sua sponte*.

If Plaintiff withdraws her emergency motion or files a notice of voluntary discontinuance of this lawsuit in response to the discovery order, this Court intends to issue a *sua sponte* order demanding that both attorneys and the Liberty & Freedom Legal Group LLC show cause why they should not be sanctioned for making misrepresentations to the court about iBRAIN's financial status. Discontinuance of the preliminary injunction motion, or even of the entire lawsuit, will not bar such an inquiry, it being well-settled that the Court retains jurisdiction to consider whether sanctions are appropriate notwithstanding the filing of a voluntary dismissal. *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014). Furthermore, the discovery I am ordering in connection with the pending motion for emergency relief will be just as pertinent to

8

the resolution of any sanctions proceeding as it would be to the resolution of the pending motion – which means that we will be taking the discovery that I have ordered one way or the other.

## Conclusion

The Court reserves judgment on all issues pending completion of the discovery ordered above. Until such time as Plaintiff can demonstrate that her application is not simply an attempt to "circumvent[]" the "ordinary . . . procedures" that apply to IDEA claims, *Mendez*, 65 F.4th at 63, the motion will remain in abeyance and the drastic relief sought by Plaintiff will not issue. *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005).

This is a written opinion. However, it does not dispose of any motion.

Dated: October 30, 2025

_____

U.S.D.J

BY ECF TO ALL COUNSEL